UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

NIKOLAOS XYDOUS,

                              Plaintiff,

v.                                                          6:24-CV-0135
                                                            (GTS/MJK)

THE CITY OF UTICA; SERGEANT WOODIN;
OFFICER MOWERS; OFFICER MORETTI;
OFFICER RIOS; and LIEUTENANT HOWE,

                              Defendants.

_____

APPEARANCES:                                    OF COUNSEL:

GARY S. FISH, ESQ.                              GARY S. FISH, ESQ.
    Counsel for Plaintiff
30 Vesey Street, 15th Floor
New York, NY 10007

CITY OF UTICA CORPORATION COUNSEL               ZACHARY C. OREN, ESQ.
    Counsel for Defendants                      First Assistant Corporation Counsel
1 Kennedy Plaza, 2nd Floor
Utica, NY 13502

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this civil rights action filed by Nikolaos Xydous

("Plaintiff") against the City of Utica and five of its police officers ("Defendants"), is

Defendants' motion to dismiss Plaintiff's Amended Complaint for lack of subject-matter

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and/or for failure to state a claim upon which

relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).   (Dkt. No. 19, Attach. 6.)   For the

1

reasons set forth below, Defendants' motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint asserts three claims of

abuse of process against Defendants under the Fourteenth Amendment and 42 U.S.C. § 1983

arising from events that occurred in Utica, New York, between July 1, 2021, and October 2022.

(Dkt. No. 12.)

More specifically, Plaintiff's first claim arises from Defendants' alleged refusal, between

October 1, 2022, and November of 2022, to investigate four reports by Plaintiff of criminal

activity (including trespass, assault, and/or possession of weapons) by approximately 12 people

on or near that rental properties that he owned, managed and/or was responsible for at or near

1202-1204 Stark Street in Utica, New York (for which Plaintiff was foreseeably both civilly and

criminally liable), and their allegedly instead telling Plaintiff that any further requests by him, or

any entry made by him onto the real property in question, would result in him being arrested.

(*Id*. at ¶¶ 1-16.)

Plaintiff's second claim arises from Defendants Mowers' and Moretti's alleged act,

between approximately July 1, 2021, and approximately July 26, 2021, of preventing the

performance of Plaintiff's contract with Zelinski Tree Cutters (to whom Plaintiff's project

manager had paid approximately $2,000.00) to remove trees from a rental property that Plaintiff

managed at or near 1204 Stark Street in Utica, New York, for the false and pretextual reason that

the tree cutters were not using "the right chain saw," when in fact those two Defendants were

retaliating against Plaintiff for reporting that Deon William (a tenant of Plaintiff's management company) had been harassing Plaintiff and other tenants.   (*Id*. at ¶¶ 16-21.)

Plaintiff's third claim arises from Defendants Mowers' and Moretti's alleged act, between approximately July 1, 2021, and approximately July 26, 2021, of refusing to stop tenant Deon Williams (whom the police department "favored") from, or arrest him for, "push[ing] a camera . . . into the face of" Plaintiff (and calling Plaintiff racial epithets) for the pretextual reason that their laptop computer's Report Managing System was not working, when in fact those two Defendants bore personal animus against Plaintiff and threatened him with adverse action if they had to return to his property.   (*Id*. at ¶¶ 22-26.)

Familiarity with these claims, and the factual allegations supporting them in Plaintiff's Amended Complaint, is assumed in this Decision and Order, which is intended primarily for review by the parties.

### B.     Summary of Parties' Arguments on Defendants' Motion

#### 1.     Defendants' Memorandum of Law

Generally, in support of their motion to dismiss, Defendants assert the following five arguments:[1] (1) as a threshold matter, this Court does not have subject-matter jurisdiction over Plaintiff's second and third claims under the *Rooker-Feldman* doctrine, because, based on the documents adduced by Defendants, it is clear that (a) Plaintiff received a state-court judgment against him on November 7, 2022, (b) his second and third claims complain of injuries caused by

---

[1]     The Court has rearranged Defendants' five arguments so as to present the argument based on a lack of subject-matter jurisdiction before the arguments based on a failure to state a claim.

that state-court judgment (which rejected claims arising from the same events that give rise to his second and third claims), (c) by seeking a favorable adjudication on his second and third claims, he is inviting this Court to review and reject that state-court judgment, and (d) the state-court judgment was rendered before Plaintiff filed his second and third claims; (2) even if the Court did possess subject-matter jurisdiction over Plaintiff's second and third claims, he has failed to state either claim under the doctrine of *res judicata*, because, on November 7, 2022, he received a judgment against him based on claims arising from the same events that give rise to his second and third claims, he has not appealed that judgment, and the time in which to do so has expired; (3) in any event, none of the three claims in Plaintiff's Amended Complaint has stated a viable claim for abuse of process, because (a) none of the three claims allege facts plausibly suggesting that Defendants Mowers and/or Moretti actually initiated any "legal process" against Plaintiff (but only denied him "police services," threatened him with arrest, and/or incorrectly told Plaintiff not to cut down some trees because he did not have the correct chainsaw), (b) none of the three claims allege facts plausibly suggesting that Defendants Mowers and/or Moretti acted with intent to do harm without excuse of justification (but rather allege that fact only conclusorily), and (c) none of the three claims allege facts plausibly suggesting that Defendants Mowers and/or Moretti acted in order to obtain a collateral objective that is outside the legitimate ends of the process (but rather allege that fact only conclusorily or allege the existence of a retaliatory motive, which is insufficient under *Savino v. City of New York*, 331 F.3d 63, 76 [2d Cir. 2003]); (4) in any event, none of the three claims in Plaintiff's Amended Complaint has stated a viable claim for abuse of process under 42 U.S.C. § 1983, because, based on the factual

allegations of the Amended Complaint, Defendants are protected from liability as a matter of law by the doctrine of qualified immunity, in that no clearly established law states that *in*action by the police provides a basis for an abuse-of-process claim; and (5) Plaintiff's municipal liability claim against Defendant City of Utica must be dismissed, because (a) as explained above, Plaintiff has failed to allege facts plausibly suggesting any underlying constitutional violation for which a municipality could be liable, and (b) in any event, Plaintiff has failed to allege facts plausibly suggesting the existence of any municipal policy, ordinance, regulation, or decision that caused an underlying constitutional violation, as required by *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).   (*See generally* Dkt. No. 19, Attach. 6 [Defs.' Memo. of Law].)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in Plaintiff's response to Defendants' motion, he asserts the following five arguments: (1) federal subject-matter jurisdiction exists because the Court possesses such jurisdiction over Plaintiff's first claim, and therefore it also possesses jurisdiction over his second and third claims (each of which is "incorporated" by first claim); (2) the doctrine of *res judicata* does not apply because (a) the state-court dismissal was not "on the merits" but resulted from the fact that "a 50-h hearing of claimant Nikolaos Xydous was not held," (b) the state-court case did not involve a municipal-liability claim (under *Monell*), and (c) the state-court case was not against Defendants Woodin, Rios and Howe; (3) all of the three claims in Plaintiff's Amended Complaint have stated a viable claim for abuse of process, because (a) they have each alleged the elements of such a claim with sufficient specificity and concreteness for purposes of *Ashcroft v.*

*Iqbal*, 556 U.S. 662 (2009), (b) in support of his first claim, he has alleged a deliberate shutting

down of the police department Report Managing System ("RMS"), (c) in support of his second

claim, he has alleged Defendants Mowers and Moretti's interference with Plaintiff's "intellectual

property" (specifically, his company contract with Zelinski Tree Cutters), and (d) in support of

his third claim, he has alleged a "Nixonian fabrication and/or loss of evidence" (specifically

video footage of the criminal activity reported by Plaintiff); (4) the actions taken by the police

officers support a *Monell* claim against Defendant City of Utica, because the alleged actions of

Defendants Mowers and Moretti were "consonant with deliberate municipality driven action";

and (5) finally, the affidavit of defense counsel (Dkt. No. 19, Attach. 1) and its four exhibits

should be "entirely disregarded" as "false" and "defective," and Plaintiff should be provided an

additional 20 days in which to file a Second Amended Complaint.   (*See generally* Dkt. No. 21

[Plf.'s Opp'n Memo. of Law].)

### 3. Defendants' Reply Memorandum of Law

Generally in their reply, Defendants assert the following three arguments: (1) as a

threshold matter, Plaintiff's second and third claims must be dismissed based on the *Rooker-*

*Feldman* doctrine and the doctrine of qualified immunity, because Plaintiff has failed to

effectively respond to Defendants' arguments regarding those doctrines, and has thus lightened

Defendants' burden on those arguments to one of showing only facial merit, which they have

met; (2) in any event, Plaintiff's second and third claims must be dismissed based on the doctrine

of *res judicata*, because Defendants Woodin, Rios and Howe in this action were privies of the

City of Utica in the state-court action during the alleged incidents; and (3) in any event, all three

6

of Plaintiff's claims must be dismissed, because he is suing Defendants due to their alleged

failure to act rather than alleged actual affirmative action.   (*See generally* Dkt. No. 24 [Defs.'

Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

It is a fundamental precept that federal courts are courts of limited jurisdiction.   *Owen

Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).   Generally, a claim may be

properly dismissed for lack of subject-matter jurisdiction where a district court lacks

constitutional or statutory power to adjudicate it.   *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.

2000).   A district court may look to evidence outside of the pleadings when resolving a motion

to dismiss for lack of subject-matter jurisdiction.   *Makarova*, 201 F.3d at 113.   The plaintiff

bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.

*Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).   When a

court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must

be resolved and inferences drawn in favor of the plaintiff.   *Aurecchione v. Schoolman Transp.

Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova,* 201 F.3d at 113).

Under the *Rooker-Feldman* doctrine,[2] federal courts may "lack [subject-matter]

jurisdiction over suits that are, in substance, appeals from state-court judgments."   *Hoblock v.

Albany Cnty. Bd. of Electors*, 422 F.3d 77, 84 (2d Cir. 2005).   A claim is barred under the

---

[2]     *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1982).

*Rooker-Feldman* doctrine if the following four requirements are met: (1) the federal court

plaintiff lost in state court; (2) the federal court plaintiff complains of injuries caused by a state

court judgment; (3) the federal court plaintiff invites the federal court to review and reject that

state court judgment; and (4) the state court judgment was rendered before the commencement of

proceedings in the federal court.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

284 (2005); *Hoblock*, 422 F.3d at 85.

     Such a dismissal must be without prejudice because the *Rooker-Feldman* doctrine

deprives the Court of the subject-matter jurisdiction necessary to render a ruling on the merits.

*See Charles v. Levitt,* 716 F. App'x 18, 22 (2d Cir. 2017) ("[T]he *Rooker-Feldman* doctrine

implicates federal courts' subject matter jurisdiction, rather than the substantive merits of a case. .

. .  [W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with

prejudice.") (internal citation and quotation marks omitted); *Vossbrinck v. Accredited Home

Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) ("The *Rooker-Feldman* doctrine pertains not to

the validity of the suit but to the federal court's subject matter jurisdiction to hear it.");

*Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 124 (2d Cir. 1999) ("In sum, we hold that,

because the district court lacked subject matter jurisdiction, it did not have the power to dismiss

the complaint with prejudice.").

### B.     Legal Standard Governing Motions to Dismiss for Failure to State Claim

     It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.   *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de*

*novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.   Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "*a short and plain* statement of the claim *showing* that the pleader is entitled to

relief."   Fed. R. Civ. P. 8(a)(2) [emphasis added].   In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"

pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."   *Jackson*, 549 F.

Supp.2d at 212, n.20 (citing Supreme Court case).   On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

what the plaintiff's claim is and the grounds upon which it rests."   *Jackson*, 549 F. Supp.2d at

212, n.17 (citing Supreme Court cases) (emphasis added).[3]

The Supreme Court has explained that such *fair notice* has the important purpose of

"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

---

[3]      *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

on the merits" by the court.    *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).    For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).    For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.    *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.    *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).    In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."    *Twombly*, 127 S. Ct. at 1968-69.    Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.    *Id*. at 1965-74.    The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."    *Id*. at 1965.    More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.    *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a

dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters

outside the four corners of the complaint may be considered without triggering the standard

governing a motion for summary judgment: (1) documents attached as an exhibit to the

complaint or answer, (2) documents incorporated by reference in the complaint (and provided by

the parties), (3) documents that, although not incorporated by reference, are "integral" to the

complaint, or (4) any matter of which the court can take judicial notice for the factual

background of the case.[4]

---

[4]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573,
2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to
dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.
R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the
complaint or answer, [2] documents incorporated by reference in the complaint (and provided by
the parties), [3] documents that, although not incorporated by reference, are "integral" to the
complaint, or [4] any matter of which the court can take judicial notice for the factual
background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(explaining that a district court considering a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) "may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and
documents incorporated by reference in the complaint. . . .   Where a document is not
incorporated by reference, the court may neverless consider it where the complaint relies heavily
upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.   It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

**C.      Legal Standard Governing Plaintiff's Claim of Abuse of Process**

The elements of a claim under 42 U.S.C. § 1983 for malicious abuse of process are

provided by state law.   *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).   Generally, in New

York, "[a]buse of process has three essential elements: (1) regularly issued process, either civil

or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in

a perverted manner to obtain a collateral objective."   *Curiano v. Suozzi*, 480 N.Y.S.2d 466, 468

(N.Y. 1984).   More specifically, "[t]o prove abuse of process, plaintiff must show [the following

three elements]: (1) regularly issued process compelling the performance or forbearance of some

prescribed act, (2) the person activating the process must have been motivated to do harm

without economic or social excuse or justification, and (3) the person activating the process must

be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside

the legitimate ends of process." *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) (citing

*Hornstein v. Wolf*, 491 N.Y.S.2d 183, 187 [N.Y. App. Div., 2d Dep't 1985], *aff'd*, 499 N.Y.S.2d

938 [N.Y. 1986]); *see also Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale*

*Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 380 N.Y.S.2d 635, 642 (N.Y. 1975)

("Despite the paucity of New York authority, three essential elements of the tort of abuse of

process can be distilled from the preceding history and case law. First, there must be regularly

issued process, civil or criminal, compelling the performance or forbearance of some prescribed

act. Next, the person activating the process must be moved by a purpose to do harm without that

which has been traditionally described as economic or social excuse or justification . . . Lastly,

defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff

13

which is outside the legitimate ends of the process.") (citations omitted).

With regard to the first element, the "process" in question must be "initiated . . . against [the] plaintiff."   14 *N.Y. Prac., New York Law of Torts* § 1:88: "Abuse of process—Use of regularly issued process" (Aug. 2023) (citing, *inter alia*, *Williams*, 23 N.Y.2d at 596 ["Process is a direction or demand *that the person to whom it is directed* shall perform or refrain from the doing of some prescribed act."] [emphasis added]).   Moreover, the "process" must be "issued by or filed in a court . . . ."   *Id.* (citing *Glaser v. Kaplan*, 170 N.Y.S.2d 522, 525 [N.Y. App. Div., 2d Dep't 1958] ["The first cause of action . . . is not sufficient as one for abuse of process since the notice of lien and sale served and published by appellants was not process issued by or filed in a court."]).

For example, a refusal to arrest a third-party at a plaintiff's request is not considered "process" on which an abuse-of-process claim may be based.   *See Hogan v. County of Lewis*, 11-CV-0754, 2015 WL 1400496, at *19 (N.D.N.Y. March 26, 2015) (Kahn, J.) ("Even if it were true that Croneiser and Lehman unlawfully refused to arrest Plaintiffs' neighbors, such a finding would not demonstrate that legal process was abused as against Mr. Hogan . . . .").[5]   Similarly, a

---

[5]      *Cf. Town of Castle Rock v. Gonzales,* 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations. This result reflects our continuing reluctance to treat the Fourteenth Amendment as 'a font of tort law.'"); *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs*., 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."); *Pitchell v. Callan*, 13 F.3d 545, 548-549 (2d Cir. 1994) ("[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *Sandage v. Bd. of Com'rs of Vanderburgh Cnty.*, 548 F.3d 595, 597 (7th Cir. 2008) ("No one has a federal constitutional right to have another person jailed.").

failure to investigate something or someone at a plaintiff's request is also not considered such a "process." *See Gibbs v. City of New York,* 213 N.Y.S.3d 705, at *2 (N.Y. Sup. Ct., N.Y. Cnty. 2024) (granting the defendants' motion to dismiss "Plaintiff's cause of action for abuse of process . . . because he does not allege any cognizable fact to support . . . [that] abuse of process claim," only that Defendants, inter alia, "failed to investigate or evaluate evidence") (internal quotation marks omitted); *Nabatkhorian v. Cnty. of Nassau*, 12-CV-1118, 2013 WL 1233247, at *7 (E.D.N.Y. March 27, 2013) ("[T]he Complaint states that the abuse of process was caused by the County Defendants' collective failure to adequately investigate the allegedly false charges made against him. . . .  Accordingly, the Court finds that Plaintiff has failed to state a claim for abuse of process against Detectives Moran and Faltings, and those claims are hereby DISMISSED."); *Cabble v. City of New York*, 04-CV-9413, 2009 WL 890098, at *4 (S.D.N.Y. Mar. 30, 2009) ("In his Amended Complaint, Plaintiff alleges that the abuse of process was caused by the City's continued refusal to adequately investigate the allegedly false charges made against him by his accusers. . . .  Notably, Plaintiff does not allege that Defendant engaged in the legal process to compel performance or forbearance of some act.").[6]

With regard to the third element, "[t]he gist of the action for abuse of process lies in the improper use of process *after* it is issued" (not simply the malicious causing of process to issue). *Dean v. Kochendorfer*, 237 N.Y. 384, 390 (N.Y. 1924) (emphasis added), *accord, Hauser v.*

---

[6]    *See also Spector v. Bd. of Tr. of Comm.-Tech. Colleges*, 06-CV-0129, 2007 WL 4800726, at *13 (D. Conn. Dec. 27, 2007) ("Neither a failure to investigate nor surveillance constitutes a 'legal process' for the purposes of an abuse of criminal process claim.") (albeit presumably applying Connecticut law).

*Bartow*, 273 N.Y. 370, 373 (N.Y. 1937), *Williams v. Williams*, 23 N.Y.2d 592, 596 (N.Y. 1969);
*see also Curiano*, 480 N.Y.S.2d at 468 ("[P]laintiffs have not alleged the gist of the action for
abuse of process, which is the improper use of process after it is issued.") (internal quotation
marks omitted).

Finally, with regard to both the first and third elements, a claim for abuse of process
requires "unlawful interference" with the plaintiff's "person or property." *See Curiano*, 480
N.Y.S.2d at 468 ("Relevant on this appeal are the first and last of these elements. . . . [T]he
process used must involve an unlawful interference with one's person or property.") (internal
citations omitted); *Julian J. Studley, Inc. v. Lefrak*, 393 N.Y.S.2d 980, 982 (N.Y. 1977) ("Since
here there was no unlawful interference with Studley's person or property pursuant to regularly
issued process, a cause of action for its abuse does not lie."); *Williams v. Williams*, 298 N.Y.S.2d
473, 477 (N.Y. 1969) ("It follows that there must be an unlawful interference with one's person
or property under color of process in order that action for abuse of process may lie.").

Such an unlawful interference with person or property must be the type that is associated
with, or occurs through, the use of a provisional remedy (such as an arrest, injunction,
attachment, receivership, or notice of pendency). *See Tenore v. Kantrowitz, Goldhamer &
Graifman, P.C.*, 907 N.Y.S.2d 255, 257 (N.Y. App. Div., 2d Dep't 2010) (dismissing the
defendant's counterclaim for abuse of process because, *inter alia*, "the defendant did not allege
that the plaintiff interfered with the defendant's property rights after the issuance of process by
resorting to a provisional remedy"); *Niagara Mohawk Power Corp. v. Testone*, 708 N.Y.S.2d
527, 531 (N.Y. App. Div., 4th Dep't 2000) ("The proposed counterclaims fail to allege

16

interference with Testone's person or property through the use of a provisional remedy, a necessary element of [a] cause[] of action for . . . abuse of process . . . .") (citation omitted); *Otiniano v. Magier*, 580 N.Y.S.2d 759, 760 (N.Y. App. Div., 1ˢᵗ Dep't 1992) ("The abuse of process claim fails because, *inter alia,* plaintiff was not subjected to the wrongful use of a provisional remedy [such as attachment, arrest or injunction].); *Sokol v. Sofokles,* 523 N.Y.S.2d 155, 157 (N.Y. App. Div., 2d Dep't 1988) ("[T]he appellant can state no cause of action to recover damages for abuse of process as he was not subject to the wrongful use of a provisional remedy."); *Bio-Tech. Gen. Corp.*, 886 F. Supp. at 382-83 ("To have a legally sufficient claim for abuse of process . . . , there must be the type of interference with property that is associated with the issuance of a provisional remedy. . . ."); *Ferran v. Town of Grafton*, 979 F. Supp. 944, 947 (N.D.N.Y. 1997) (Scullin, J.) ("[T]he Court finds that Plaintiffs have failed under New York law to establish . . . their malicious abuse of process claim as to any of the Defendants. . . . [T]here is absolutely no evidence that Plaintiffs' persons or property were interfered with through the issuance of a provisional remedy such as attachment or arrest.").

For example, such interference may occur through the closing down of the plaintiff's business.  *See* 86 *N.Y. Jur. 2d Process and Papers* § 165, "Unlawful interference with plaintiff's person or property as element of actionable abuse of process" (2d ed. 2025) ("Interference can be established by a showing, for example, that . . . the person's business was closed down.") (citing *Tender Trap, Inc. v. Town of Huntington*, 418 N.Y.S.2d 537, 541 [N.Y. Sup. Ct., Suffolk Cnty. 1979] ["There was no arrest in this case, no closing down of the operation, or other interference with property [of the bar and grill corporation or its president], and consequently, the cause of

17

action for abuse of process is dismissed."].).

However, such interference may not occur through merely causing the plaintiff to lose business, lose the ability to enter into a third-party contract, or incur litigation expenses. *See Bio-Tech. Gen. Corp. v. Genentech, Inc*., 886 F. Supp. 377, 382-83 (S.D.N.Y. 1995) ("Plaintiff argues that its $2 million in attorney's fees and its loss of the ability to enter into third party contracts is sufficient to fulfill this requirement [of showing an interference with property]. However, the clear weight of case law is to the contrary."), *aff'd*, 267 F.3d 1325 (Fed. Cir. 2001); *Unitrode Corp. v. Dynamics Corp. of Am*., 79-CV-0990, 1980 U.S. Dist. LEXIS 11503, at *4 (S.D.N.Y. May 21, 1980) ("Nor, it has been stated, does 'interference' which results in a loss of business, injury to reputation, or expense arising from the litigation, constitute the type of interference with person or property necessary to sustain an abuse of process claim."), *accord*, *Ann-Margret v. High Soc. Magazine, Inc.*, 498 F. Supp. 401, 407 (S.D.N.Y.1980); *The Savage is Loose Co. v. United Artists Theatre Circuit, Inc*., 413 F. Supp. 555, 562 (S.D.N.Y.1976) ("The fact that [the defendant] has been unable to repeat its direct deal distribution plan [with a third-party producer] may be attributed to nothing more than the uniqueness of this type of financial arrangement in the movie industry. The other events cited by [the defendant in support of its counter-claim of abuse of process] as interfering with its property are a concomitant of any lawsuit and do not support a cause of action for abuse of process.").[7]

---

[7]    This is so even if the intent of the loss of business was to force the plaintiff's business to close. *See Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, 11-CV-3327, 2013 WL 417406, at *16 (S.D.N.Y. Feb. 4, 2013) ("Plaintiff does not allege that Defendants interfered with its property under color of process, other than stating that Defendants intended to cause economic injury to Korova and ultimately force the business to close. Accordingly, Defendants'

18

III.    **ANALYSIS**

    A.    **Whether Plaintiff's Second and Third Claims Must Be Dismissed Without Prejudice for Lack of Subject-Matter Jurisdiction Pursuant to the *Rooker-Feldman* Doctrine**

After carefully considering the matter, the Court answers this question in the negative for the following reasons.

As a threshold matter, the Court observes that it is tempted to agree with Defendants that Plaintiff has effectively conceded their *Rooker-Feldman* argument by not adequately opposing it in his opposition memorandum of law.   Generally, in this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensin*i, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

Here, Defendants spent approximately two full pages of their memorandum of law-in chief asserting arguments regarding the *Rooker-Feldman* doctrine (including an application of

---

motion for judgment on the pleadings for the abuse of process claim is GRANTED.").

the doctrine's four requirements to the facts of this case).   (Dkt. No. 19, Attach. 6, at 23-25 [pages "20" through "22" of Defs.' Memo. of Law].)   In response, Plaintiff argued that "Plaintiff incorporates herein, I [sic] above analysis, in support of the argument that federal subject matter jurisdiction exists herein."   (Dkt. No. 21, at 4.)   However, Plaintiff's above-cited "analysis" was merely that "federal subject matter jurisdiction exists in the [1st count of plaintiff [sic] first amended complaint as of right, a fortiori, also applies to both the 2nd and 3rd counts, which are incorporated therein, by the 1st count."   (*Id*. at 2 [capitalization removed].)

Nowhere in his opposition memorandum of law does Plaintiff even attempt to rebut Defendants' argument that each of the four requirements of the doctrine apply to Plaintiff's second and third claims.   Moreover, Plaintiff cites no authority for the point of law that he may save from dismissal two federal claims that are essentially precluded by a prior state court judgment simply by incorporating into those claims factual allegations giving rise to a third claim that is not so precluded.[8]

In any event, even if the Court were to subject Defendants' *Rooker-Feldman* argument to the less-rigorous scrutiny appropriate for an uncontested argument, the Court would have trouble finding that the argument survives that scrutiny.   As explained above in Part II.A. of this

---

[8]     Of course, regardless of whether the second and third claims are "incorporated" by the first claim (or vice versa), the second and third claims arise from alleged events distinct from the alleged events giving rise to the first claim.   (*Compare* Dkt. No. 12, at ¶¶ 1-16 [asserting first claim based on alleged events regarding Plaintiff's four reports of criminal activity between approximately October 1, 2022, and November 2022] *with* Dkt. No. 12, at ¶¶ 16-26 [asserting second claim based on alleged events regarding Zelinski Tree Cutters occurring between approximately July 1, 2021, and approximately July 26, 2021, and third claim based on alleged event of Deon Williams pushing a camera into Plaintiff's face between approximately July 1, 2021, and approximately July 26, 2021].)

Decision and Order, a claim is barred under the *Rooker-Feldman* doctrine if the following four

requirements are met: (1) the federal court plaintiff lost in state court; (2) the federal court

plaintiff complains of injuries caused by a state court judgment; (3) the federal court plaintiff

invites the federal court to review and reject that state court judgment; and (4) the state court

judgment was rendered before the commencement of proceedings in the federal court.

Certainly, before filing this action, Plaintiff lost in state court.    However, Plaintiff's

Amended Complaint in this action does not expressly complain of injuries caused by his prior

state-court judgment, nor does it even expressly reference that judgment.    (*See generally* Dkt.

No. 12.)[9]    Moreover, it is difficult for the Court to conclude that the second and third claims in

Plaintiff's Amended Complaint even *implicitly* complain of injuries caused by his prior state-

court judgment.    Rather, Plaintiff's second and third claims (which are for abuse of process and

are asserted against the City of Utica and five of its police officers, specifically, Sergeant

Woodin, Officer Mowers, Officer Moretti, Officer Rios, and Lieutenant Howe) arise mainly

from Officers Mowers' and Moretti's alleged acts, between approximately July 1, 2021, and

approximately July 26, 2021, of preventing the performance of Plaintiff's contract with Zelinski

Tree Cutters, refusing to stop Deon Williams from pushing a camera into Plaintiff's face, and

---

[9]    *Cf. Sowell v. Southbury-Middlebury Youth and Fam. Servs., Inc.*, 18-CV-1652, 2019 WL
3552405, at \*5 (D. Conn. Aug. 5, 2019) ("To the extent that these two counts explicitly reference
the Connecticut Supreme Court's decision in *Mendillo* and seek on that basis a ruling that would
invalidate the Connecticut Supreme Court's prior application of Rule 72-1(b) and its stare decisis
doctrine, Counts Nine and Ten are similarly barred by the *Rooker-Feldman* doctrine. On the
other hand, to the extent that these causes of action seek more generally to challenge the
constitutional validity of Rule 72-1(b) and stare decisis apart from how these rules were applied
in the prior state court proceedings in *Sowell* and *Mendillo*, then I conclude that this aspect of
Counts Nine and Ten falls outside the scope of the *Rooker-Feldman* doctrine.").

threatening to retaliate against Plaintiff for again complaining to the police.   (Dkt. No. 12, at ¶¶ 16-26.)   Meanwhile, the six claims in Plaintiff's state-court complaint (which are for slander, intentional interference with a contractual relationship, slander per se, and three claims of intention infliction of severe emotional distress, and are asserted against the City of Utica and three of its police officers, specifically Officer Morrows, Officer Moretti and John Doe) arise from Officers Mowers' and Moretti's alleged acts of intentionally wrongfully accusing Plaintiff, on or about July 6, 2021, of harassing his tenants, and intentionally wrongfully threatening to take away Plaintiff's properties, thereby causing him to subsequently lose business opportunities and tenancy rent proceeds.   (Dkt. No. 19, Attach. 4 [attaching *Xydous v. City of Utica, et al*., Civil Index Number EFCA2022-001257, Amended Complaint (N.Y. Sup. Ct., Oneida Cnty. filed Sept. 20, 2022)].)

For all of these reasons, the Court is unable to find that the *Rooker-Feldman* doctrine deprives the Court of subject-matter jurisdiction over Plaintiff's second and third claims.

Before proceeding to the remaining arguments presented by Defendants, the Court hastens to add that, in rendering its above-stated finding, the Court in no way accepts Plaintiff's argument that the four exhibits attached to defense counsel's affidavit should be disregarded as "false" and "defective."   (Dkt. No. 21, at 2.)    Plaintiff does not cite the rule or statute on which he bases this request, as required by Local Rule 7.1(b)(1) of the Court's Local Rules of Practice. (*See generally* Dkt. No. 21.)   To the extent that he relies on Fed. R. Civ. P. 12(f), that rule does not apply, because an affidavit is not a "pleading."   Moreover, to the extent that he argues that defense counsel's affidavit is "false" or "defective" not because the exhibits attached thereto are

not true and accurate copies of what they are purported to be but because the exhibits do not trigger the application of either the *Rooker-Feldman* doctrine or the doctrine of *res judicata*. However, the inapplicability of those doctrines would not render the affidavit "false" or "defective." – especially given the factual (and not argumentative) nature of defense counsel's representations about the exhibits.  (Dkt. No. 19, Attach. 1, at 2-3.)  Simply stated, a party cannot strike an opponent's affidavit merely by impugning the affiant's honesty.  *Cf. Island Software and Computer Serv., Inc. v. Microsoft Corp*., 413 F.3d 257, 261 (2d Cir. 2005) ("Broad, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact."); *McCullough v. Wyandanch Union Free Sch. Dist*., 187 F.3d 272, 280 (2d Cir. 1999) (explaining that a plaintiff does not create a genuine issue of fact merely by "impugning [a witness'] honesty").

     **B.**    **Whether Plaintiff's First Claim – and His Second and Third Claims if They Have Not Been Dismissed for Lack of Subject-Matter Jurisdiction – Must Be Dismissed with Prejudice Because of the Numerous Pleading Defects Identified by Defendants**

     After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order.   To those reasons, the Court adds the following analysis.

     As an initial matter, the Court does not rely on the doctrine of *res judicata* in rendering its above-stated finding with regard to Plaintiff's second and third claims.[10]   For the sake of

---

[10]     The Court notes that, in rendering this finding, it does not rely on Plaintiff's arguments that the doctrine of *res judicata* does not apply because (1) the state-court case did not involve a municipal-liability claim (under *Monell*), and (2) the state-court claims were not asserted against Defendants Woodin, Rios and Howe: the Court rejects both arguments as unpersuasive.

brevity, the Court will not linger on its prior finding that Plaintiff's second and third claims in this action arose out of events that are somewhat different (if not broader in scope) than the events giving rise to his six claims in his state court action. *See, supra,* Part III.A. of this Decision and Order (comparing the factual allegations of both pleadings).[11]   More important is that the Court is inclined to agree with Plaintiff that his state-court case "was dismissed not on the merits . . . but because a 50-h hearing of claimant Nikolaos Xydous was not held . . . ." (Dkt. No. 21, at 2 [citing page 4 of a decision by N.Y. Supreme Court Justice David A. Murad], which is attached at Dkt. No. 19, Attach. 5.)   Generally, a dismissal under N.Y. Gen. Mun. L. § 50-h is not one that is treated as "on the merits" for purposes of the doctrine of *res judicata*.   *See Wilson v. New York City Housing Auth.*, 791 N.Y.S2d 567,568 (N.Y. App. Div., 2d Dep't 2005) ("On a prior appeal in this case . . . , this court dismissed the plaintiffs' original complaint based on their failure to comply with a condition precedent to the commencement of an action against the defendant (see General Municipal Law § 50–h). Such an order would not ordinarily bar the commencement of a second action after the plaintiffs' omission has been cured . . . . As a general rule, where a dismissal does not involve a determination on the merits, the doctrine of res judicata does not apply . . . .") (internal citations and quotation marks omitted); *DeRonda v. Greater Amsterdam Sch. Dist.*, 458 N.Y.S.2d 310, 311 (N.Y. App. Div., 3d Dep't 1983) ("Clearly there, Special Term's original dismissal of the infant's cause of action was not on the

---

[11]     The Court acknowledges that some of the alleged events giving rise to Plaintiff's amended complaint in his state-court action are referenced among the allegations giving rise to the third claim of Plaintiff's Amended Complaint in this action.   (Dkt. No. 12, at ¶ 23.)

merits of the claim, but only for the failure to comply with the condition precedent of section 50–h.").[12]

In any event, the Court *does* accept and adopt Defendants' remaining arguments.   More specifically, for the reasons stated above in Part II.C. of this Decision and Order, the Court finds that Plaintiff's first claim is defective, because (in addition to the effect of the doctrine of qualified immunity and the lack of showing of municipal liability) refusing to arrest a third-party based on a plaintiff's complaint is not a legal process *against* the plaintiff (e.g., compelling the plaintiff to perform or forbear some prescribed act) that is *regularly issued by or filed in a court*, such that the process is capable of being abused, regardless of the reason (whether pretextual in nature or not).   *See Hogan*, 2015 WL 1400496, at *19 ("Even if it were true that Croneiser and Lehman unlawfully refused to arrest Plaintiffs' neighbors, such a finding would not demonstrate that legal process was abused as against Mr. Hogan . . . ."); *cf. Town of Castle Rock*, 545 U.S. at 768 ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations. This result reflects our continuing reluctance to treat the Fourteenth Amendment as 'a font of tort law.'"); *DeShaney*, 489 U.S. at 195 ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."); *Pitchell*, 13 F.3d at 548-549 ("[A]

_____

[12]    Plaintiff does not allege in his Amended Complaint that, before filing this action, he satisfied the condition precedent required by N.Y. Gen. Mun. Law § 50–h.   (*See generally* Dkt. No. 12.)   However, Defendants do not appear to assert that argument in their memoranda of law, and the Court is wary of evaluating it *sua sponte*.   (*See generally* Dkt. Nos. 19, 24.)

State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *Sandage*, 548 F.3d at 597 ("No one has a federal constitutional right to have another person jailed.").

Moreover, for the reasons stated above in Part II.C of this Decision and Order, the Court finds that Plaintiff's second claim is defective, because (again, in addition to the effect of the doctrine of qualified immunity and the lack of showing of municipal liability) a claim for abuse of process requires "unlawful interference" with the plaintiff's "person or property," which interference must be the type that is associated with, or occurs through, the use of a provisional remedy (such as an arrest, injunction, attachment, receivership, or notice of pendency); as a result, such interference may not occur through merely causing the plaintiff to lose the ability to enter into a third-party contract (again, regardless of the reason).   *See Bio-Tech. Gen. Corp.*, 886 F. Supp. at 382-83 ("Plaintiff argues that . . . its loss of the ability to enter into third party contracts is sufficient to fulfill this requirement [of showing an interference with property]. However, the clear weight of case law is to the contrary."), *aff'd*, 267 F.3d 1325 (Fed. Cir. 2001); *The Savage is Loose Co*., 413 F. Supp. at 562 ("The fact that [the defendant] has been unable to repeat its direct deal distribution plan [with a third-party producer] may be attributed to nothing more than the uniqueness of this type of financial arrangement in the movie industry. The other events cited by [the defendant in support of its counter-claim of abuse of process] as interfering with its property are a concomitant of any lawsuit and do not support a cause of action for abuse of process.").

Finally, for the reasons stated above in Part II.C of this Decision and Order, the Court

finds that Plaintiff's third claim is defective, because (again, in addition to the effect of the doctrine of qualified immunity and the lack of showing of municipal liability) refusing to investigate a plaintiff's reports of criminal activity is not a legal process that is *regularly issued by or filed in a court*, such that the process is capable of being abused, regardless of the reason (whether pretextual in nature or not).    *See Gibbs,* 213 N.Y.S.3d 705 at *2 (granting the defendants' motion to dismiss "Plaintiff's cause of action for abuse of process . . . because he does not allege any cognizable fact to support . . . [that] abuse of process claim," only that Defendants, inter alia, "failed to investigate or evaluate evidence") (internal quotation marks omitted); *Nabatkhorian*, 2013 WL 1233247, at *7 ("[T]he Complaint states that the abuse of process was caused by the County Defendants' collective failure to adequately investigate the allegedly false charges made against him. . . .    Accordingly, the Court finds that Plaintiff has failed to state a claim for abuse of process against Detectives Moran and Faltings, and those claims are hereby DISMISSED."); *Cabble*, 2009 WL 890098, at *4 ("In his Amended Complaint, Plaintiff alleges that the abuse of process was caused by the City's continued refusal to adequately investigate the allegedly false charges made against him by his accusers. . . . Notably, Plaintiff does not allege that Defendant engaged in the legal process to compel performance or forbearance of some act.").

Similarly, although an arrest is the sort of provisional remedy whose use may constitute an unlawful interference with the plaintiff's person or property, *threatening* to arrest the plaintiff for an offense committed in the officer's presence (e.g., falsely reporting an incident or harassing a tenant) is not a legal process that is capable of being abused, because such a *warrantless* arrest

– much less a mere *threat* to effect a warrantless arrest – is not a legal process that is *regularly issued by or filed in a court* (unlike, for example, an arrest *warrant* issued by a judge, or the application for such a warrant which is filed in a court). *See, e.g., Remley v. New York,* 665 N.Y.S.2d 1005, 1008 (N.Y. Ct. Cl. 1997) (finding a claim for abuse of process to be without merit where it was based on, in part, the plaintiff's arrest without a warrant), *accord, Schanbarger v. Kellogg*, 352 N.Y.S.2d 50, 53 (N.Y. App. Div., 3d Dep't 1974); *Sforza v. City of New York,* 07-CV-6122, 2009 WL 857496, at *17 (S.D.N.Y. March 31, 2009) ("Sforza's abuse-of-process claim fails on multiple grounds. Her opposition to the City's motion does not attempt to address the point that her claim, based on a warrantless arrest, does not involve legal process."); *cf. Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) ("In this case, Singer's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not pursuant to legal process.") (quotation marks omitted).[13]

For all of these reasons, Plaintiff's three claims are dismissed with prejudice.

---

[13]    *See also Place v. Ciccotelli*, 995 N.Y.S.2d 348, 352 (N.Y. App. Div., 3d Dep't 2014) ("Here, plaintiff's allegations in the complaint pertaining to this cause of action, even construed liberally, fail to allege that defendant actually used process improperly—either the order of protection or the arrest *warrant*—in a manner inconsistent with the purpose for which it was designed . . . .") (internal quotation marks and citations omitted; emphasis added); *Miles v. City of Hartford,* 445 F. App'x 379, 383 (2d Cir. 2011) ("We assume *arguendo* that the filing of documents to obtain Miles's arrest warrant constituted the initiation of judicial process."); *Leibovitz v. City of New York*, 14-CV-3297, 2016 WL 3671232, at *7 (S.D.N.Y. March 17, 2016) ("The arrest warrant that Detective Valle procured was employed for the very purpose of its filing, namely the plaintiff's arrest for criminal contempt in the second degree and aggravated harassment in the second degree.") (internal quotation marks omitted), *adopted*, 2016 WL 3661530 (S.D.N.Y. June 1, 2016).

**C.      Whether Plaintiff Should Be Given Leave to File a Second Amended Complaint**

After carefully considering the matter, the Court answers this question in the negative.

For the sake of brevity, the Court will not linger on the fact that Plaintiff has already availed himself of the opportunity to state such a claim in an Amended Complaint yet has failed to do so.   *See Dyson v. N.Y. Health Care, Inc*., 353 F. App'x 502, 503-04 (2d Cir. 2009) ("[T]he district court did not abuse its discretion by dismissing Dyson's third amended complaint with prejudice. . . . [T]he district court afforded Dyson three opportunities to file an amended complaint so as to comply with Rule 8(a)(2), and, despite these, she did not plead any facts sufficient to show that she was plausibly entitled to any relief."); *Cortec Indus., Inc. v. Sum Holding L.P*., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim [i.e., despite having been given leave to replead its claim], a complaint should be dismissed with prejudice.").

More important is that the fact that defects in Plaintiff's claims are so substantive (and not merely formal) that amendment would not appear likely to cure the pleading defects.   *See Ruffolo v. Oppenheimer & Co*., 987 F.2d 129, 131 (2d Cir.1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."), *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (finding that denial was not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes

of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Amended Complaint (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 12) is **DISMISSED with prejudice**.

Date:    June 25, 2025
         Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

30